■ JOHN T. BISCONE, Respondent, v JOHN CARNEVALE et al., Appellants, et al., Defendants. (Action No. 1.) JOHN CARNEVALE et al., Appellants, v JOHN MAURO et al., Respondents. (Action No. 2.)—Crew III, J. Appeals (1) from an order of the

---

Supreme Court (Cheeseman, J.), entered July 18, 1991 in Albany County, which denied a motion by John Carnevale and Donna C. Carnevale (defendants in action No. 1 and plaintiffs in action No. 2) for, *inter alia,* consolidation of the two actions, and (2) from an order of said court (Prior, Jr., J.), entered January 10, 1992 in Albany County, which granted plaintiff's motion in action No. 1 for summary judgment.

In June 1990, John Mauro and Maureen Mauro (defendants in action No. 2) entered into a contract to sell residential property owned by them in the Town of New Scotland, Albany County, to John Carnevale and Donna C. Carnevale (defendants in action No. 1 and plaintiffs in action No. 2). The property had a purchase price of $235,000 and, as part of the financing arrangement, the Mauros agreed to loan the Carnevales $35,000. This loan was secured by a second mortgage on property owned by the Carnevales in the City of Albany. The initial agreement signed by the Carnevales and the Mauros provided for a $35,000 loan "with no interest for a term not to exceed five (5) years". According to the Carnevales, the loan was to be repaid in a balloon payment five years after the closing. At the September 17, 1990 closing, however, the Carnevales executed a note and mortgage which provided for repayment of the $35,000 loan without interest in monthly installments of $583.33 beginning October 17, 1990. The following day, Maureen Mauro assigned the $35,000 mortgage to John T. Biscone, the Mauros' attorney who is plaintiff in action No. 1 and a defendant in action No. 2. In November 1990 Biscone, having received no mortgage payment from the Carnevales, informed them that they were in default.

Biscone thereafter commenced action No. 1 to foreclose on the $35,000 mortgage and the Carnevales simultaneously commenced action No. 2 seeking to reform the note and mortgage. Following joinder of issue, the Carnevales moved to consolidate action Nos. 1 and 2 and disqualify Biscone as the Mauros' attorney. Biscone subsequently moved in action No. 1 for summary judgment upon his complaint. Supreme Court denied the Carnevales' motion, granted Biscone's motion and appointed a Referee to determine the total sum due on the note and mortgage. These appeals followed and are being heard together.

With respect to the disqualification issue, while it is true that an attorney may not, as a general rule, "possess[ ] a personal, business or financial interest at odds with that of his client" *(Greene v Greene,* 47 NY2d 447, 452), Biscone's interest was acquired prior to the commencement of the instant litiga-

tion and is the same as the Mauros. Thus, there is no basis for concluding that Biscone's professional judgment has been compromised by the Mauros' assignment of the note and mortgage to him, nor is there any violation of Code of Professional Responsibility DR 5-103 (A) (22 NYCRR 1200.22 [A]). As to the alleged conflict of interest regarding the drafting of the note and mortgage, Biscone avers that the mortgage was drawn pursuant to the directions of his client, Maureen Mauro, and the affidavit submitted by Maureen Mauro avers that the mortgage was prepared by Biscone "in such a way as to [provide for] the monthly payments set forth therein" and, further, that there was no mistake or misunderstanding on her part, or in the documents related to the closing, regarding the repayment terms. Accordingly, we are unable to conclude that Supreme Court abused its discretion in denying the Carnevales' motion in this regard.

As to that branch of the Carnevales' motion seeking consolidation of action Nos. 1 and 2, "[i]t is well established that the power to order consolidation rests in the sound discretion of the [trial] court, and that where common questions of law or fact exist, consolidation is warranted unless the party opposing consolidation demonstrates prejudice to a substantial right" (Berman v Greenwood Vil. Community Dev., 156 AD2d 326, 326-327; see, Zupich v Flushing Hosp. & Med. Ctr., 156 AD2d 677). Here, the Carnevales raised as an affirmative defense in action No. 1 mutual mistake of fact as to the repayment schedule and commenced action No. 2 seeking reformation of the note and mortgage upon the same ground. Plainly, common questions of law and fact exist and neither Biscone nor the Mauros has made any showing of prejudice to a substantial right. Accordingly, we conclude that Supreme Court abused its discretion in not consolidating action Nos. 1 and 2.

The Carnevales further contend that Biscone's motion for summary judgment should have been denied because there is a triable issue of fact as to whether the repayment terms contained in the note and mortgage reflect the parties' true agreement. We agree, although we reject the Carnevales' assertion that the mistake sought to be corrected here was in the reduction of the agreement to writing rather than in the agreement itself (see, Hart v Blabey, 287 NY 257, 262; Tursi v St. Joseph's Sanatorium, 133 AD2d 910, 912). The mistake alleged here relates to a material term of the agreement, i.e., the repayment terms, and therefore cannot be fairly characterized as a scrivener's error.

In order to survive Biscone's motion for summary judgment, the Carnevales had to demonstrate "in no uncertain terms, not only that mistake or fraud exist[ed], but exactly what was really agreed upon between the parties" *(Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219). Donna Carnevale avers that during the initial negotiations, she and her husband authorized their real estate broker, David Wilson, to "make an offer to the Mauros of $235,000.00, $35,000.00 of the price being a no interest no payment balloon mortgage payable in five (5) years", and that the Mauros subsequently accepted this offer. Although the attorney representing the Carnevales at the closing was apparently unaware of the secondary financing, Donna Carnevale asserts that prior to executing the note and mortgage, she informed counsel that "there was a $35,000.00 balloon mortgage". Additionally, the Carnevales submitted Wilson's affidavit, wherein he states that he drafted the initial agreement between the Carnevales and the Mauros "providing for a $35,000.00 balloon payment after five years secured by a mortgage upon property owned by the Carnevales [in the City of Albany]". Although the agreement itself is silent as to the repayment terms, Wilson unequivocally states that "all four parties at the time of entering into this agreement on June 6, 1990 were well aware and had agreed to the $35,000.00 balloon payment after five years and *specifically did not contemplate any other payment during the course of the term*" (emphasis supplied). We conclude that this proof is sufficient to raise a question of fact regarding the parties' true agreement as to repayment terms.

In reaching this result, we observe that the Court of Appeals' decision in *Chimart Assocs. v Paul* (66 NY2d 570), upon which Biscone and the Mauros rely, is readily distinguishable. In *Chimart,* the court held that "[w]here a written agreement between sophisticated, counseled businessmen is unambiguous on its face, one party cannot defeat summary judgment by a *conclusory* assertion that, owing to mutual mistake or fraud, the writing did not express his own understanding of the oral agreement reached during negotiations" *(supra,* at 571 [emphasis supplied]). *Chimart,* however, involved a multimillion dollar transaction between sophisticated parties dealing at arm's length and the affidavit submitted by the defendant therein merely asserted that he believed a mistake had been made regarding certain interest payments *(supra,* at 575); here, we have a residential real estate transaction between homeowners and the Carnevales' proof amounts to more than a conclusory assertion that a mistake has been made. Addi-

tionally, although the Carnevales were represented by counsel at the closing, counsel was apparently unfamiliar with the financing arrangements and did not review the note and mortgage prior to the Carnevales' execution of it. Finally, Donna Carnevale avers that upon arriving at the closing, she received a phone call that her seven-month-old child had a temperature of 106 degrees prompting her husband and herself to sign the necessary documents with dispatch and without reading them in order to return home to their child. In short, the Carnevales have offered a reasonable excuse for their failure to read the documents in question and extrinsic evidence as to what was actually agreed to between the parties. Accordingly, the order granting Biscone's motion for summary judgment must be reversed.

Yesawich Jr., J. P., Levine, Mahoney and Harvey, JJ., concur. Ordered that the order entered July 18, 1991 is modified, on the law, with costs to John Carnevale and Donna C. Carnevale, by reversing so much thereof as denied the Carnevales' motion for consolidation; said motion granted; and, as so modified, affirmed. Ordered that the order entered January 10, 1992 is reversed, on the law, with costs, and motion denied.